UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JOHNSON,<br>      Plaintiff and Counter-Defendant,<br>v.<br>STORIX, INC., a California Corporation,<br>      Defendant and Counter-Claimant. | Case No.: 3:14-cv-1873-H-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>[Doc. No. 165] |

On August 8, 2014, Plaintiff and Counter-Defendant Anthony Johnson ("Plaintiff Johnson") filed a complaint alleging copyright infringement of a software program. (Doc. No. 1.) On September 19, 2014, Defendant and Counter-Claimant Storix, Inc. ("Defendant Storix") filed an answer and counterclaim seeking a declaratory judgment that it did not infringe any copyright and that it owned all copyrights in the software. (Doc. No. 5.) On December 8, 2015, the action came before the Court for a jury trial. (Doc. No. 142.) On December 15, 2015, the jury returned a verdict in favor of Defendant Storix. (Doc. No. 160.) On December 18, 2015, the Court entered judgment in favor of Defendant Storix and awarded costs to Defendant Storix as provided by law. (Doc. No. 164.) On January 4, 2016, Defendant Storix filed its bill of costs. (Doc. No. 166.) On January 25, 2016, the

Clerk granted Defendant Storix taxable costs pursuant to 28 U.S.C. § 1920 amounting to $11,414.64. (Doc. No. 178.)

On January 4, 2016, Defendant Storix filed a motion pursuant to 17 U.S.C. § 505 seeking costs not taxable under 28 U.S.C. § 1920 as well as attorneys' fees. (Doc. No. 165.) On January 29, 2016, Plaintiff Johnson opposed Defendant Storix's motion for costs and fees. (Doc. No. 180.) On February 12, 2016, Defendant Storix replied to Plaintiff Johnson's opposition.[1] (Doc. No. 184.) On February 23, 2016, the Court held a hearing on the motion. Andrew Skale and Anne-Marie Dao appeared for Plaintiff Johnson, and Paul Tyrell and Sean M. Sullivan appeared for Defendant Storix.

At the request of the parties, on February 25, 2016, the Court permitted mediation before a magistrate judge. (Doc. No. 194.) The parties participated in mediation sessions on March 29, 2016 and April 4, 2016. (Doc. Nos. 202, 204.) On May 5, 2016, the magistrate judge issued a minute entry indicating that the parties were unable to reach a settlement. (Doc. No. 213.)

On June 16, 2016, the Supreme Court issued an opinion in Case No. 15-375, <u>Kirtsaeng v. John Wiley & Sons, Inc.</u> At the Court's request, each party filed a memorandum explaining how that decision should impact the Court's analysis of Defendant's motion for costs and fees on July 18, 2016. (Doc. Nos. 217, 218.) Each party filed a response to the other party's memorandum on August 1, 2016. (Doc. Nos. 223, 224.) On August 2, 2016, Plaintiff Johnson objected to Defendant Storix's response memorandum.[2] (Doc. No. 227.) On August 15, 2016, the Court heard supplemental

---

[1] On January 29, 2016, Defendant Storix filed a supplement to its motion for fees and costs. (Doc. No. 179.) On February 3, 2016, Plaintiff Johnson objected to the supplement. (Doc. No. 181.) On February 19, 2016, Plaintiff Johnson opposed the supplement. (Doc. No. 188.) On February 19, 2016, Defendant Storix filed a second supplement to its motion for fees and costs. (Doc. No. 189.) On February 22, 2016, Plaintiff Johnson objected to the second supplement. (Doc. No. 190.) On February 22, 2016, the Court granted Plaintiff Johnson until March 4, 2016, to file a response to the second supplement, but Plaintiff did not file a response. (Doc. No. 191.)

[2] The Court has considered all of the objections raised by the parties in connection with this motion. To the extent the objections are valid, the Court sustains them. To the extent the objections are invalid, the Court overrules them.

argument on the motion. Andrew Skale and Ben Wagner appeared for Plaintiff, and Paul Tyrell and Sean Sullivan appeared for Defendant. For the reasons that follow, the Court grants in part and denies in part the motion for costs and fees.

## Discussion

I.  Legal Standards

The Copyright Act states, "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In its recent opinion in Kirtsaeng v. John Wiley & Sons, Inc., the Supreme Court confirmed that there are a number of nonexclusive factors that courts may consider in determining whether a proposed award "advances the Copyright Act's goals" of "encouraging and rewarding authors' creations while also enabling others to build on that work." 136 S. Ct. 1979, 1986 (2016). These factors include motivation, the objective unreasonableness of the losing party's factual and legal arguments, the degree of success obtained, the need, in particular circumstances, to advance considerations of compensation and deterrence, and frivolousness. Id. at 1985; Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994); Omega S.A. v. Costco Wholesale Corp., 776 F.3d 692, 695-96 (9th Cir. 2015).

In weighing these factors, Courts must "give substantial weight to the objective reasonableness of the losing party's position." Kirtsaeng, 136 S. Ct. at 1983. An unsuccessful position is not necessarily objectively unreasonable, and courts must not "confuse[] the issue of liability with that of reasonableness." Id. at 1988. Reasonableness or unreasonableness is not dispositive, and courts "must also give due consideration to all other circumstances relevant to granting fees." Id. at 1983. Courts retain "discretion, in light of those factors, to make an award even when the losing party advanced a reasonable claim or defense." Id. "There is no precise rule or formula for making these determinations . . . ." Fogerty, 510 U.S. at 534. "Prevailing plaintiffs and prevailing defendants are to be treated alike." Id. at 534; see also Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1120

(9th Cir. 2007).

"When calculating the amount of attorney fees to be awarded in a litigation, the district court applies the lodestar method, multiplying the number of hours reasonably expended by a reasonable hourly rate." Ryan v. Editions Ltd. W., Inc., 786 F.3d 754, 763 (9th Cir. 2015). "When a party seeks an award of attorneys' fees, that party bears the burden of submitting evidence of the hours worked and the rate paid. In addition, that party has the burden to prove that the rate charged is in line with the prevailing market rate of the relevant community." Carson v. Billings Police Dep't, 470 F.3d 889, 891 (9th Cir. 2006) (citations and quotation marks omitted). The Court may adjust the lodestar figure in light of twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Carter v. Caleb Brett LLC, 757 F.3d 866, 869 (9th Cir. 2014). In addition to attorneys' fees, "district courts may award otherwise non-taxable costs, including those that lie outside the scope of [28 U.S.C.] § 1920, under [17 U.S.C.] § 505." Twentieth Century Fox Film Corp. v. Entm't Distrib., 429 F.3d 869, 885 (9th Cir. 2005).

II.     Recovery of Fees

In evaluating whether to award attorneys' fees, the Court considers Plaintiff Johnson's motivations, the reasonableness of Plaintiff Johnson's positions, the degree of Defendant Storix's success, the need to advance considerations of compensation and deterrence, and the frivolousness of Plaintiff Johnson's litigation positions and tactics. Kirtsaeng, 136 S. Ct. at 1985; Fogerty, 510 U.S. at 534 n.19; Omega S.A., 776 F.3d at 695-96.

A.   Motivation

The Court first considers Plaintiff Johnson's motivation in bringing the case. Kirtsaeng, 136 S. Ct. at 1985; Omega S.A., 776 F.3d at 695. "[A] court's discretion may be influenced by the plaintiff's culpability in bringing or pursuing the action, but blameworthiness is not a prerequisite to awarding fees to a prevailing defendant." Fantasy, 94 F.3d at 558. In this case, Plaintiff Johnson took a number of actions demonstrating that his motivation was not simply to win damages for alleged copyright infringement. On September 26, 2015, Plaintiff Johnson sent an email to several Storix directors and employees titled "Buckle up boys!" (Doc. No. 66-1, Huffman Decl. Ex. A, at 5-9.) The email stated in part:

> That means, when I win the very near copyright decision, which we all know I will, the company will be paying back all my legal expenses. And you will be paying the company back, for mine and its expenses.
> . . .
> Here's your one option. Get the f[...] out. Give your stock back to the company, resign your board seat, terminate your employment. Leave with just what you gave me. Only then your name will be removed from the derivative[ ]action, giving you some hope of keeping your homes and perhaps finding other jobs. But once this is filed, all options are off the table. The damages I will be granted in the copyright case will transfer from the company to YOU.

(Id.)

Plaintiff Johnson also stated in that email that he would send an announcement to Defendant Storix's customers and tell them, among other things, that the software they purchased from Defendant Storix infringed on Plaintiff Johnson's copyright. (Id.) On October 6, 2015, Plaintiff Johnson sent the announcement to Defendant Storix's customers in which he demanded that the customers cease paying Defendant Storix for the use of its software. (Doc. No. 66-1, Huffman Decl. Ex. B, at 10-11.) On October 7, 2016, Plaintiff Johnson sent an email to one of Defendant Storix's employees declaring a hope that his announcement to the company's customers would result in Defendant Storix running out of money so that it would be unable to continue defending the lawsuit. (Doc. No. 66-1,

Huffman Decl. Ex. D, at 16.) In that email, Plaintiff Johnson also threatened litigation that would cause the employee to lose his home. (Id.)

"Courts have held a plaintiff demonstrates bad faith when alleging [a] copyright claim to secure benefits other than merely addressing grievances." Brighton Collectibles, Inc. v. Pedre Watch Co., No. 3:11-CV-00637 AJB WVG, 2014 WL 29008, at *4 (S.D. Cal. Jan. 2, 2014) (citing Maljack Prod., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 (9th Cir.1996)). In this case, Plaintiff Johnson demonstrated that his motives were not merely to secure a copyright infringement judgment, but also to wrest control of the company from its majority shareholders and to force the company to "close its doors." (Doc. No. 66-1, Huffman Decl. Ex. D, at 16.) Accordingly, Plaintiff Johnson's motivations weigh in favor of Defendant Storix's request for attorneys' fees.[3]

B.   Objective Reasonableness

In considering whether to award attorney fees, the Court gives "substantial weight" to its assessment of Plaintiff Johnson's reasonableness over the course of the litigation. Kirtsaeng, 136 S. Ct. at 1983. Plaintiff Johnson's litigation tactics became increasingly unreasonable as the case progressed. In his September 26, 2015, "Buckle up boys!" email, Plaintiff Johnson threatened Storix employees and shareholders with ruinous litigation if they did not surrender control of the company to him and resign from their jobs. (Doc. No. 66-1, Huffman Decl. Ex. A, at 5-9.) In his October 6, 2015, announcement to Storix customers, Plaintiff Johnson predicted an end to customer support for SBAdmin and

---

[3] The Court recognizes that Plaintiff Johnson has had a difficult time realizing that he no longer controls Defendant Storix and its product. Plaintiff Johnson created SBAdmin, a software program for backing up files stored on computers, in 1998 and 1999 while he was a sole proprietor doing business as Storix Software. (Doc. No. 145, Trial Transcript Vol. I, at 82-90.) In 2003, Plaintiff Johnson incorporated Defendant Storix, and he transferred assets to Defendant Storix. (Doc. No. 145, Trial Transcript Vol. I, at 138.) From 2003 to 2011, Plaintiff Johnson was the president and sole shareholder of Defendant Storix, a corporation that existed primarily to sell copies of SBAdmin to customers. In 2011, due to illness, Plaintiff Johnson stepped down from his leadership position and gifted sixty percent of Defendant Storix's outstanding stock to certain employees, thereby reducing Plaintiff Johnson's ownership in Defendant Storix to forty percent. (Doc. No. 145, Trial Transcript Vol. I, at 159-71.) Now a minority shareholder, Plaintiff Johnson desires to exert majority control over the company, but this desire does not reflect the reality of his current business situation.

demanded that the customers cease paying Defendant Storix for the use of its software. (Doc. No. 66-1, Huffman Decl. Ex. B, at 10-11.) In his October 7, 2016, email to one of Defendant Storix's employees, Plaintiff Johnson declared an intention to force Defendant Storix to "close its doors" and threatened litigation that would cause the employee to lose his home. (Doc. No. 66-1, Huffman Decl. Ex. D, at 16.)

The parties went to trial to determine whether Plaintiff Johnson transferred his copyright in SBAdmin to Defendant Storix in 2003 at the time of Defendant Storix's incorporation. The Ninth Circuit recently held that, "[i]f a plaintiff has a claim that hinges on disputed facts sufficient to reach a jury, that claim necessarily is reasonable because a jury might decide the case in the plaintiff's favor." VMG Salsoul, LLC v. Ciccone, 824 F.3d 871, 887 (9th Cir. 2016). Other courts, however, have noted that a "'claim that is not 'objectively unreasonable' at the outset can become so if the litigant continues to pursue it when the litigant knew or should have known that the chance of success was slim to none.'" Erickson Prods. Inc. v. Kast, No. 5:13-CV-05472-HRL, 2016 WL 3951659, at *2 (N.D. Cal. July 22, 2016) (quoting Frost-Tsuji Architects v. Highway Inn, Inc., No. 13-00496 SOM/BMK, 2015 WL 5601853, at *5 (D. Hawaii, Sept. 23, 2015)). And, in Kirtsaeng, the Supreme Court noted that an attorneys' fees award in a copyright case is meant to give a litigant with a meritorious case "an incentive to litigate the case all the way to the end." 136 S. Ct. at 1986.

Applying these legal standards, the Court evaluates the objective reasonableness of Plaintiff Johnson's positions. On March 15, 2004, Plaintiff Johnson signed an annual report (the "Annual Report") that stated, "2003 represented the first 10 months in the life of Storix as a Corporation. Prior to 2003, Storix Software was a sole proprietorship. All assets from Storix Software were transferred to Storix Inc, as of its incorporation of February 24, 2003." (Doc. No. 165-5, Trial Exhibit CD, at 35.) Plaintiff Johnson survived summary judgment by arguing that the Annual Report did not memorialize his intent to transfer the copyright in SBAdmin to Defendant Storix. (Doc. Nos. 56 at 12; 84 at 5-7.) See Radio Television Espanola S.A. v. New World Entm't, Ltd., 183 F.3d 922, 927 (9th

1  Cir. 1999) ("[T]he parties' intent as evidenced by the writing must demonstrate a transfer
2  of the copyright.") (citing Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u>,
3  § 10.03[A][2] at 10–37 ("As with all matters of contract law, the essence of the inquiry
4  here is to effectuate the intent of the parties.")); <u>Provenz v. Miller</u>, 102 F.3d 1478, 1489
5  (9th Cir. 1996) ("Cases where intent is a primary issue generally are inappropriate for
6  summary judgment . . . .").

7        At trial, Defendant Storix adduced overwhelming evidence demonstrating that the
8  Annual Report did in fact memorialize Plaintiff Johnson's intent to transfer the copyright
9  in SBAdmin. For example, shortly after the 2003 incorporation, the "clickwrap" license
10 for SBAdmin stated, "Copyright (c) 1999-2003 Storix, Inc." (Doc. No. 165-5, Trial Exhibit
11 BQ, at 9.) On January 29, 2004, Plaintiff Johnson sent an email insisting that a distributor
12 refrain from suppressing a copyright statement in the software reading, "Copyright (c)
13 1999-2003 Storix, Inc." (Doc. No. 165-5, Trial Exhibit BY, at 17.) On February 17, 2004,
14 and on March 7, 2007, Plaintiff Johnson signed distribution agreements that stated,

15–19
> "STORIX shall retain and own all right, title and interest in the Software and Documentation, and each copy thereof, and all intellectual property rights with respect thereto without limiting the generality of the foregoing, STORIX claims and reserves to itself all right in the Software and any associated documentation and all benefits afforded under U.S. copyright law, all international copyright conventions, and U.S. and international intellectual property law."

20 (Doc. No. 165-5, Trial Exhibits CC, DL, at 20, 54.)

21       Significantly, on January 24, 2006, Plaintiff Johnson stated in an email to a German
22 lawyer who was advising Storix in a trademark dispute, "It is not entirely possible for us
23 to completely abolish the use of STORIX with our product, as it is the company that owns
24 the copyright to the product, documentation, web site and support." (Doc. No. 165-5, Trial
25 Exhibit CQ, at 45.) Plaintiff Johnson did not state that Defendant Storix was using the
26 copyright pursuant to a license. (<u>See</u> Doc. No. 223 at 4.)

27       Similarly, on March 26, 2007, Plaintiff Johnson sent an email to his employees
28 instructing them to include language on the Storix website and software documentation

that read, "Copyright Storix, Inc. 1999-2007 USA." (Doc. No. 165-5, Trial Exhibit DQ, at 69.) On August 20, 2010, Plaintiff Johnson sent an email to the Oracle Corporation that stated, "The company acquiring Storix will gain the most comprehensive disaster recovery product available for any operating system on the market." (Doc. No. 165-5, Trial Exhibit FP, at 71.) On August 26, 2010, Plaintiff Johnson made a submission to the IBM Corporation in which he proposed selling Storix to IBM and stated, "IBM would gain the most comprehensive disaster recovery product available for any UNIX or Linux operating system on the market . . . ." (Doc. No. 165-5, Trial Exhibit FQ, at 76.) In summary, over the course of many years, Plaintiff Johnson repeatedly and consistently stated to third parties that Defendant Storix owned the copyright in SBAdmin, which was the company's most significant asset.

When confronted at trial with the representations he made to third parties when he sought to sell Storix, Inc., Plaintiff Johnson stated, "Yeah, and I lied. I admit it. I lied." (Doc. No. 146, Trial Transcript Vol. II, at 203). The evidence Defendant Storix adduced confirmed that the Annual Report meant what it said: when Plaintiff Johnson said he was transferring "all assets," he meant "all assets," including the copyright. See Radio Television, 183 F.3d at 927. In the face of this overwhelming evidence, it was unreasonable for Plaintiff Johnson to maintain that he did not intend to transfer the copyright. Nevertheless, the Ninth Circuit has stated that, for purposes of awarding attorneys' fees, claims such as Plaintiff Johnson's are necessarily reasonable if they hinge on disputed facts sufficient to reach a jury. VMG Salsoul, 824 F.3d at 887. Accordingly, the Court concludes the Plaintiff Johnson's position was objectively reasonable, at least through the conclusion of trial, and the Court gives "substantial weight" to this assessment.[4] Kirtsaeng, 136 S. Ct. at 1983; VMG Salsoul, 824 F.3d at 887.

---

[4] The Court notes the tension between the Ninth Circuit's holding that cases that proceed to trial are objectively reasonable, VMG Salsoul, 824 F.3d at 887, and the Supreme Court's observation that an attorneys' fees award in a copyright case is meant to give a litigant with a meritorious case "an incentive to litigate the case all the way to the end." Kirtsaeng, 136 S. Ct. at 1986.

### C. Degree of Success

The Court next considers "the degree of success obtained" by Defendant Storix. Omega S.A., 776 F.3d at 695. According to the jury's special verdict, Plaintiff Johnson proved that "he obtained a valid copyright for an original work of authorship relating to SBAdmin." (Doc. No. 160 at 2.) The jury answered in Defendant Storix's favor on Plaintiff Johnson's claim for copyright infringement and found that Defendant Storix "owns all rights to the copyrights to all versions of SBAdmin." (Doc. No. 160.) This was not a case in which the prevailing party achieved only a limited degree of success or won on a technicality. See Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1231 (9th Cir. 1997) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983)); Fantasy, Inc. v. Fogerty, 94 F.3d 553, 560 (9th Cir. 1996). On the contrary, as the Court stated in its judgment, the verdict was in Defendant Storix's favor. (Doc. No. 164 at 2.) Accordingly, the degree of success factor weighs in favor of Defendant Storix.

### D. Considerations of Compensation and Deterrence

The Court next considers "'the need in particular circumstances to advance considerations of compensation and deterrence.'" Kirtsaeng, 136 S. Ct. at 1985 (quoting Fogerty, 510 U.S. at 534 n.19). Plaintiff engaged in a variety of behavior that should be deterred. On January 16, 2016, a month after the jury returned its verdict against him, Plaintiff Johnson sent an email to a Storix employee asking the employee to secretly communicate with him about what was happening inside the company and to delete their correspondence. (Doc No. 216-2, Bonert Decl. Ex. 1, at 3-4.) That email also indicated that Plaintiff Johnson had been working on revising the SBAdmin software and that he had a marketable product. (Id. at 3.) Additionally, the email stated, "[Storix's leadership] tell you they now own the copyright, but they don't." (Id.) In light of the jury's verdict stating that Defendant Storix owns all copyrights to SBAdmin, Defendant Storix sent a cease and desist letter to Plaintiff Johnson demanding that he cease copying, distribution, modification, or sale of any version of SBAdmin. (Doc. No. 216-4, Tyrell Decl. Ex. 5, at 26-27.) On January 22, 2016, Plaintiff Johnson stated that he would not return materials

related to SBAdmin and declined to respond to the demand that he cease copying, distribution, modification, or sale of SBAdmin.[5] (Doc. No. 216-4, Tyrell Decl. Ex. 8, at 31-32.)

Plaintiff Johnson's pre-judgment litigation tactics should also be deterred. It was inappropriate for Plaintiff Johnson to tell Defendant Storix's shareholders to "get the [expletive] out" and to attempt to coerce them into surrendering control of the company. (Doc. No. 66-1, Huffman Decl. Ex. A, at 5-9.) It was inappropriate for Plaintiff Johnson to demand that Defendant Storix's customers stop paying for the use of its software in an attempt to prevent Defendant Storix from having enough money to continue defending the lawsuit. (Doc. No. 66-1, Huffman Decl. Ex. B, at 10-11, Huffman Decl. Ex. D, at 16.) It was also inappropriate for Plaintiff Johnson to threaten Defendant Storix's directors with the loss of their homes while he was telling the customers to stop paying Storix to undermine the company. (Doc. No. 66-1, Huffman Decl. Ex. A, at 5-9, Huffman Decl. Ex. D, at 16.) This inappropriate conduct should be deterred. See Omega S.A., 776 F.3d at 695-96.

An award of attorneys' fees is justified to deter litigants in copyright cases from interfering with the rights of a copyright holder. Scorpio Music (Black Scorpio) S.A. v. Willis, No. 3:11-CV-1557 BTM RBB, 2015 WL 5476116, at *3 (S.D. Cal. Sept. 15, 2015). An award is also justified when a party's actions unnecessarily expand another party's work. Love v. Mail on Sunday, No. CV05-7798 ABC (PJWX), 2007 WL 2709975, at *5 (C.D. Cal. Sept. 7, 2007), aff'd sub nom. Love v. Associated Newspapers, Ltd., 611 F.3d 601 (9th Cir. 2010). "[T]he need in [these] particular circumstances to advance considerations of . . . deterrence" is strong, see Kirtsaeng, 136 S. Ct. at 1985, and this factor weighs in favor of Defendant Storix's request for attorneys' fees.

///

---

[5] As a result of Plaintiff Johnson's refusal, Defendant Storix has filed a motion for further relief pursuant to 28 U.S.C. § 2202, which remains pending. (Doc. No. 216.)

E.     Frivolousness

Finally, the Court considers whether Plaintiff Johnson's case was frivolous. Kirtsaeng, 136 S. Ct. at 1985. "[A] frivolous claim under the Copyright Act is one that, in either the factual or legal assertions, is clearly baseless, involving fantastic or delusional scenarios." Perfect 10, Inc. v. Giganews, Inc., No. CV 11-07098-AB SHX, 2015 WL 1746484, at *8 (C.D. Cal. Mar. 24, 2015) (citations and quotation marks omitted); see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, No. C 04-00371 JW, 2005 WL 2007932, at *4 (N.D. Cal. Aug. 12, 2005) (citing Neitzke v. Williams, 490 U.S. 324, 325-328 (1989)). Plaintiff Johnson ultimately lost, but his claims did not rise to the level of fantasy or delusion. See Bisson-Dath v. Sony Computer Entm't Am. Inc., No. CV-08-1235 SC, 2012 WL 3025402, at *2 (N.D. Cal. July 24, 2012) ("A claim is not frivolous merely because it is unsuccessful."). Indeed, the Court previously stated that the case was not frivolous. (Doc. No. 214, February 23, 2016 Hearing Transcript, at 42.)

Although Plaintiff Johnson's case was not frivolous, this factor's weighing in his favor is not dispositive as to Defendant Storix's request for attorneys' fees. It used to be that "a copyright defendant had to show that the plaintiff's claim was frivolous or made in bad faith in order to be entitled to fees," but this is no longer the rule. Mattel, Inc. v. MGA Entm't, Inc., 705 F.3d 1108, 1111 (9th Cir. 2013). Rather, frivolousness is one of many factors the Court weighs in determining whether to award attorneys' fees. Kirtsaeng, 136 S. Ct. at 1985.

F.     Award of Attorneys' Fees

The Court concludes that, under Ninth Circuit precedent, Plaintiff Johnson's position was objectively reasonable on the grounds that the case proceeded to trial.[6] See VMG Salsoul, 824 F.3d at 887. The Court gives "substantial weight" to this assessment,

---

[6] This precedent may conflict with the Supreme Court's statement in Kirtsaeng that an attorneys' fees award in a copyright case is meant to give a litigant with a meritorious case "an incentive to litigate the case all the way to the end." 136 S. Ct. at 1986. But the Court leaves it to the Ninth Circuit to resolve this potential issue.

Kirtsaeng, 136 S. Ct. at 1983, and this factor counts in Plaintiff Johnson's favor. Nevertheless, the Court awards attorneys' fees to Defendant Storix on the basis of the factors to which the Court gives normal weight. Plaintiff Johnson's motivation, the degree of Defendant Storix's success, and the need to advance considerations of compensation and deterrence all weigh heavily in Defendant Storix's favor. The factors that count in Plaintiff Johnson's favor are his case's lack of frivolousness and that it survived summary judgment, and the Court concludes that these considerations are insufficient to overcome the strength of the factors that count in Defendant Storix's favor. See Kirtsaeng, 136 S. Ct. at 1985; Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994); Omega S.A. v. Costco Wholesale Corp., 776 F.3d 692, 695-96 (9th Cir. 2015). Accordingly, the Court awards attorneys' fees to Defendant Storix.

III.   Calculation of Attorneys' Fees and Costs

In calculating the fees to be awarded, the Court uses the lodestar method, and it requires the prevailing party to submit evidence demonstrating that the fees sought are the result of multiplying the number of hours reasonably expended by a reasonable hourly rate. Ryan, 786 F.3d at 763. Defendant Storix has adequately demonstrated that the rates its attorneys charged were "in line with the prevailing market rate of the relevant community." Carson, 470 F.3d at 891. (Doc. No. 165-2, Tyrell Decl. ¶¶ 20-21.) Accordingly, the Court declines to adjust the lodestar factor at this time pending review of Defendant Storix's final invoices. See Carter, 757 F.3d at 869.

In considering Defendant Storix's request for attorneys' fees in light of the Kirtsaeng factors, the Court awards Defendant Storix with the attorneys' fees it incurred in this case on and after October 6, 2015, the date of Plaintiff Johnson's email that sought to convince customers to cease paying Defendant Storix so that Defendant Storix would have insufficient funds to continue defending the lawsuit. (Doc. No. 66-1, Huffman Decl. Ex. B, at 10-11, Huffman Decl. Ex. D, at 16.) This award is subject to certain exceptions and other applicable considerations.

The Court excludes from this award fees associated with opposing Plaintiff

13

3:14-cv-1873-H-BLM

Johnson's motions in limine to preclude the testimony of Barbara Frederiksen-Cross.[7] The award also excludes any fees associated with the mediation in which the parties participated before the magistrate judge in the spring of 2016 because those efforts represented the parties' good faith attempts to resolve a variety of issues.[8] Additionally, exercising the Court's discretion, the Court excludes from the award any fees related to the briefing that Defendant Storix provided regarding Kirtsaeng v. John Wiley & Sons, Inc., including Defendant Storix's response to Plaintiff Johnson's brief and all declarations in support of those briefs, because that briefing was initiated at the Court's request and potentially involved a change in the law. (Doc. No. 215.) The Court declines at this time to award fees related to Defendant Storix's motion for further relief pursuant to 28 U.S.C. § 2202 because the motion is still pending.

Defendant Storix also seeks costs not taxable under 28 U.S.C. § 1920. (Doc. No. 165-1 at 24-25.) See Civ. L. R. 54.1. Exercising its discretion, the Court declines to award additional costs beyond those taxable under 28 U.S.C. § 1920.[9] See Twentieth Century Fox, 429 F.3d at 885.

In light of the time that has elapsed since Defendant Storix filed its motion for attorneys' fees, the Court cannot finalize its calculation of the fee award. Plaintiff Johnson has also asked for an opportunity to file an additional opposition because briefing on this motion was temporarily put on hold pending the mediation. (Doc. No. 194.) Due to the piecemeal manner in which this motion was briefed, the Court orders Defendant Storix to file, within thirty days of the date of this order, a self-contained memorandum detailing the

---

[7] The jury found in Plaintiff Johnson's favor on the issue of whether he obtained a valid copyright in SBAdmin Version 1.3. (Doc. Nos. 87, 160.)

[8] In addition to the disagreements related to this case, Plaintiff Johnson remains a minority shareholder of Defendant Storix, and the parties have also referenced state court litigation. Accordingly, mediation had the potential to address a number of disputes.

[9] The Court notes that approximately half of the costs Defendant Storix seeks are for fees paid to its technology expert, Barbara Frederiksen-Cross, who Defendant Storix did not call at trial. (Doc. No. 165-4, Tyrell Decl. Ex. 8, at 240-55; Doc. No. 179-2, Tyrell Decl. Ex. 18, at 2-4.) The Court has reviewed the other costs Defendant Storix seeks and also declines to award those costs.

fees it seeks consistent with this order. That memorandum must be accompanied by all supporting invoices for time worked from October 6, 2015, to August 15, 2016. Defendant Storix may not seek fees for any time that was originally billed to a matter other than this matter or for any time for which its attorneys did not charge (whether due to a "courtesy discount" or otherwise). (See Doc. No. 165-2, Tyrell Decl. ¶ 22.) Additionally, Defendant Storix must provide a final chart detailing the fees it seeks pursuant to this order. The chart or memorandum must account for any discounts and must specifically identify any time entries that are excluded from the award, including entries that were erroneously billed to this matter. (See id.) The Court also orders Defendant Storix to specify in a chart the portion of its total fees that are related to its request for costs and fees.[10]

Plaintiff Johnson may object to any specific time entries within thirty days of when Defendant Storix files its memorandum. Defendant Storix may file an optional response to any of Plaintiff Johnson's objections within seven days of when Plaintiff Johnson files his objections. The Court reserves the right to further consider the reasonableness of the fees and to exclude specific categories of fees once it has reviewed the updated invoices.

## Conclusion

The Court grants in part and denies in part Defendant Storix's motion for costs and attorneys' fees. The Court declines to award additional costs beyond those taxable under 28 U.S.C. § 1920. The Court awards Defendant Storix with the attorneys' fees it incurred in district court litigation in this matter on and after October 6, 2015. The Court excludes from this award any fees associated with opposing Plaintiff Johnson's motions in limine to preclude the testimony of Barbara Frederiksen-Cross, any fees associated with the mediation in which the parties participated before the magistrate judge in the spring of 2016, and any fees related to the briefing that Defendant Storix provided regarding Kirtsaeng v. John Wiley & Sons, Inc. Defendant Storix must file a memorandum detailing

---

[10] Compare Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. 2158, 2169 (2015) with Bell v. Lantz, No. 15-2341, 2016 WL 3361557, at *3 (7th Cir. June 17, 2016).

the fees it seeks consistent with this order within thirty days of the date of this order. Plaintiff Johnson may object to any specific time entries within thirty days of the date when Defendant Storix files its memorandum. Defendant Storix may file an optional response to any of Plaintiff Johnson's objections within seven days of when Plaintiff Johnson files his objections.

**IT IS SO ORDERED.**

DATED: August 17, 2016

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT